UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:

    RICHARD O. GATES,                    Misc. Case No. 18-00301-KRH

**MEMORANDUM OPINION**

This matter comes before the Court upon the Court's Order to Show Cause ("Order to Show Cause") whereby the Court directed Richard O. Gates ("Gates") to show cause why he should not be disciplined for the disruptive and abusive behavior he has directed toward court security personnel on multiple occasions upon entering the United States Courthouse in Richmond, Virginia (the "Courthouse"). The Court conducted an evidentiary hearing on the Order to Show Cause on April 4, 2018 (the "Hearing"). Gates appeared at the Hearing and offered evidence on his own behalf. The Office of the United States Trustee ("U.S. Trustee") introduced testimony from three witnesses. After the parties had presented their evidence, the Court found that Gates' inappropriate conduct warranted the imposition of sanctions. This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law in support of its decision in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[1]

**Facts**

The Hearing focused on repeated episodes of misconduct displayed by Gates while entering the Courthouse. The latest incident occurred on March 29, 2018, at approximately 9:00

---

[1] This is a contested matter governed by Bankruptcy Rules 9013 and 9014 (the "Contested Matter"). *See* Fed. R. Bankr. P. 9014(a). Certain rules under part VII of the Bankruptcy Rules are applicable to contested matters, including Bankruptcy Rule 7052. *See* Fed. R. Bankr. P. 9014(c). Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

a.m. (the "March 29, 2018 Incident"). Court Security Officer ("CSO") Tom Melton ("Melton")[2] was on duty at the security station when Gates entered the main lobby at the entrance of the Courthouse (the "Security Station").[3] Melton testified that Gates walked through the magnetometer, which triggered a waist-level alarm indicating that Gates had something that needed to be removed or inspected. Prior to allowing Gates access to the Courthouse, Melton required Gates to remove his belt and everything from his pockets and pass through the magnetometer a second time. Gates responded angrily to this perceived indignity. During a rather dramatic display of profanity-laced displeasure, Gates forcibly threw his belt onto the conveyer. The belt struck the arm of a woman waiting her turn to enter the Courthouse in the security line that had formed behind Gates. After Gates was finally cleared for entry, Melton informed Gates that his behavior was unacceptable and that he would have to report the episode to the proper authorities (*i.e.*, the lead CSO and the United States Marshals Service (the "U.S. Marshals Service")). Melton politely apologized to the woman who had been hit by the belt for Gates' conduct. Gates did not apologize.[4] Melton's testimony mirrored the Court Facility Incident Report he submitted on March 29, 2018 (the "Court Facility Incident Report").[5]

The March 29, 2018 Incident was not an isolated event. It was just the latest episode in a history of choleric, and sometimes violent, behavior directed towards court security personnel.

---

[2] CSO Melton previously worked as a police officer for over 30 years for the Henrico County Division of Police.

[3] The Security Station located at the front entrance of the main lobby of the Courthouse has a magnetometer (metal detector) through which all entrants must pass. A scanning device attached to a conveyor belt next to the magnetometer is available to x-ray personal belongings. Visitors are not permitted to bring weapons, cameras, tape recorders, computers, pagers, cell phones, or other electronic devices into the Courthouse. Court security protocol requires all visitors to present a valid government-issued form of identification, to have their personal belongings (if any) x-rayed, and to pass the magnetometer scan before gaining entry to the building. All individuals seeking entry to the Courthouse must comply with the security protocol; there is no special exception for attorneys.

[4] Gates was so oblivious and self-absorbed in his tirade that he claimed not to have known at the time that he had hurt the woman behind him.

[5] The Court Facility Incident Report was admitted at the Hearing as Exhibit 1.

Deputy U.S. Marshal Lisa Berger ("Berger")[6] received repeated calls from the CSOs concerning Gates' conduct at the Security Station, informing her that "Mr. Gates is at it again." CSO Darrin Bromseth ("Bromseth")[7] testified that he had several contentious encounters instigated by Gates. Bromseth testified that Gates would use profanity in front of the general public while trying to clear the Security Station. Bromseth had to remind Gates that Gates was an officer of the Court and that such behavior was unbecoming of a member of the profession.

Bromseth testified about a memorable Gates outburst that occurred in November 2016 (the "November 2016 Incident"). On that occasion, Gates' shoes set off the alarm as he attempted to pass through the magnetometer. Bromseth instructed Gates to take off his shoes and pass through the magnetometer a second time. Gates threw both his shoes in a container on the conveyor belt with such force that one shoe bounced out and onto the floor. In response to Gates' violent outburst, Bromseth required Gates to remain outside the secure portion of the lobby until a U.S. Marshal could properly escort him into the Courthouse. Bromseth then alerted his lead CSO who in turn called Berger. When Berger arrived at the Security Station, Gates raised his voice with her and complained to Berger about the entire screening process. Gates expressed his displeasure with having to go through security. Gates complained that no other Virginia courthouse required him to be screened prior to entry. Gates reaffirmed this position in the testimony he offered to the Court.

---

[6] U.S. Marshal Berger is the contracting officer responsible for the CSO contract. Berger is responsible for all security-related matters in all divisions of the United States District Court for the Eastern District of Virginia and of the United States Bankruptcy Court for the Eastern District of Virginia.

[7] CSO Bromseth previously worked as a detective for 27 years for the Chesterfield County Police Department.

**Jurisdiction and Venue**

The Court has jurisdiction over this Miscellaneous Proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and the general order of reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

The predicates for the relief provided herein are the Court's inherent power to supervise the professional conduct of the members of its bar and section 105(a) of Title 11 of the United States Code (the "Bankruptcy Code"). "A federal court has an inherent power 'to control admission to its bar and to discipline attorneys who appear before it.'" *In re Parker*, No. 3:14cv241, 2014 WL 4809844, at *5 (E.D. Va. Sept. 26, 2014) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)). This inherent power extends to bankruptcy courts and "includes the power to suspend or disbar attorneys from practicing before the court." *Williams v. Lynch* (*In re Lewis*), 611 F. App'x 134, 136 (4th Cir. 2015) (citing *In re Snyder*, 472 U.S. 634, 643 (1985)); *In re Evans*, 801 F.2d 703, 706 (4th Cir. 1986). Separately, section 105 of the Bankruptcy Code provides, in pertinent part, that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including but not limited to "taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a). The broad authority granted by section 105(a) "to prevent an abuse of the bankruptcy process . . . includes the power to sanction counsel." *In re Ulmer*, 363 B.R. 777, 781 (Bankr. D.S.C. 2007) (citations omitted). Attorneys may be held liable for unprofessional conduct. *In re Johnson*, No. 07-33312-KRH, 2008 WL 183342, at *5 (Bankr. E.D. Va. Jan. 18, 2008); *see also*

*Computer Dynamics, Inc. v. Merrill* (*In re Computer Dynamics, Inc.*), 252 B.R. 50, 64 (Bankr. E.D. Va. 1997), *aff'd*, 10 F. App'x 141 (4th Cir. 2001).

## Discussion

Local Bankruptcy Rule 2090-1(I) incorporates the Virginia Rules of Professional Conduct (the "Rules of Professional Conduct") as the ethical standard applicable to the practice of law before the Court. Any act or omission by an attorney that violates the Rules of Professional Conduct constitutes "misconduct." *See* LBR 2090-1(I)(1)(a). The Court is empowered to discipline an attorney who engages in misconduct after notice of the misconduct and an opportunity to be heard. *Id.* 2090-1(I)(2). The Rules of Professional Conduct prohibit a lawyer from committing a "deliberately wrongful act that reflects adversely on the lawyer's . . . fitness to practice law."[8] VA. RULE OF PROF'L CONDUCT r. 8.4(b) (2009). In addition, Local Bankruptcy Rule 2090-1(J) requires that "[c]ounsel shall at all times conduct and demean themselves with dignity and propriety." The Court may suspend lawyers who violate the Rules of Professional Conduct or Local Bankruptcy Rule 2090-1(J) from practicing before it. *See In re Snyder*, 472 U.S. at 643. This authority is derived from the lawyer's role as an officer of the court. *Id.*

The unrefuted testimony at the Hearing was disturbing. Gates' outbursts at the Security Station were disruptive, abusive, and undignified. The Court finds that Gates acted inappropriately on multiple occasions. He publicly and profanely demeaned the CSOs. He

---

[8] The term "fitness to practice law" is not defined by the Virginia Rules of Professional Conduct. However, the comments to the rules indicate as follows:
> [A] lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significant when considered separately, can indicate indifference to legal obligation.

VA. RULE OF PROF'L CONDUCT r. 8.4 cmt. 2.

disrupted their ability to screen other visitors entering the Courthouse. Gates' tirades were so extreme that they required the CSOs to summon the U.S. Marshals Service for assistance. On at least one occasion, Gates' flailing outburst caused harm to a member of the general public. Gates acted outside the bounds propriety expects from an officer of the Court. His utter lack of civility reflects adversely on his professional demeanor and on his fitness to practice law.

Gates' aloof testimony in response that, as an officer of the Court, he should not have had to have been subjected to the Court's "strict" security screening protocol is unacceptable. Gates' response demonstrates a misguided understanding of the role attorneys are supposed to play as officers of the Court. That status does not bestow entitlement, but rather it demands responsibility. An officer of the Court is expected to "demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials. *Preamble to* VA. RULE OF PROF'L CONDUCT; *cf. United States v. Shaffer Equip. Co.*, 11 F.3d 450, 457 (4th Cir. 1993) ("[L]awyers, who serve as officers of the court, have the first line task of assuring the integrity of the process."). If an attorney has a grievance, the attorney is certainly well equipped to seek redress through appropriate legal channels. In no event may attorneys simply turn rogue and take matters into their own hands.

Gates unfortunately chose to take his frustrations out on the officers who were tasked to enforce the Court's security protocol. Gates' aberrant and abhorrent behavior interfered with the ability of the CSOs and U.S. Marshals to fulfill their responsibility for ensuring the safety of everyone else who entered the Courthouse. The CSOs and U.S. Marshals have a stressful and difficult job to perform. Their work should not be made more strenuous by the members of the bar of this Court. Gates' disruptive and unruly behavior will simply not be tolerated.

The imposition of sanctions is appropriate given the extent of Gates' repeated refusal to conform his conduct to the rather low bar of general civility required to enter a federal courthouse, even after being warned by Berger. Not only will sanctions serve to deter future misconduct, but also they may help to protect Court security personnel from similar violent outbursts in the future and assist Court security personnel with the efficient flow of entrants into the Courthouse. The Court finds it appropriate to sanction Gates by barring him from practicing law before the United States Bankruptcy Court for the Eastern District of Virginia for a period of six months. Gates will also be banned during that period from entering the Courthouse. Gates' removal as a member of the Bar of this Court under Local Bankruptcy Rule 2090-1(A) will be effective as of April 5, 2018. Gates may move for readmission to practice before the United States Bankruptcy Court for the Eastern District of Virginia after the six-month suspension period.

A separate order shall issue.

April 5 2018

/s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

ENTERED: April 5 2018

**Copies to:**

**Richard O. Gates**
P.O. Box 187
Chesterfield, VA 23832

**Richard O. Gates**
Gates Law
10030 Ironbridge Road
Chesterfield, VA 23832

7

**Robert Van Arsdale**
Office of the U.S. Trustee
701 E. Broad Street, Suite 4304
Richmond, VA 23219